1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

AMAZON.COM INC., et al.,

CASE NO. C23-1646-KKE

9

Plaintiff(s),

ORDER GRANTING PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT

v.

10
11

ZHUMABUBU ABDYRAKHMANOVA, et
al.,

12

Defendant(s).

13        Plaintiff The Procter & Gamble Company ("P&G") owns a cosmetics brand called SK-II

14   that formulates skin care products made with yeast extract.  Together with Plaintiffs Amazon.com,

15   Inc. and Amazon.com Services LLC (collectively "Amazon"), P&G filed this action, alleging that

16   Defendants[1] sold counterfeit SK-II products via Amazon's store.  Dkt. No. 1.  Defendants have

17   not appeared or otherwise defended this action, and the Court entered an order of default against

18   them.  Dkt. No. 17.

19
20
21
22

---

[1] The Defendants are Zhumabubu Abdyrakhmanova, Adyl Arslanbek Uulu, Markus Biacsics, Maksym Drahomyr, Viaceslav Ivanchyk, Svitlana Karpalova, Denys Kniaziev, Melih Korkmaz, Inna Korman, Zinaida Leinveber, Isabek Mamytov, Vartan Manukyan, Oleh Myha, Serhii Oliinyk, Tetiana Pustovit, Kieran Rivera, Anastasiia Shvehlo, Tetiana Sierhieieva, Oleksii Ulanov, and Tetiana Volochniuk (collectively "Defendants").

23
24

Plaintiffs have now moved for entry of default judgment. Dkt. No. 21.[2] Plaintiffs have shown that they are entitled to default judgment on their claims against Defendants, and the Court will grant Plaintiffs' motion and award the damages and injunctive relief Plaintiffs request.

## I.    BACKGROUND

Plaintiffs allege that, from December 2021 through July 2023, Defendants advertised, marketed, offered, distributed, and sold counterfeit SK-II-branded products via Amazon, using marks owned by P&G ("SK-II Trademarks") without authorization to deceive customers about the authenticity and origin of the products and the products' affiliation with SK-II. Dkt. No. 1 ¶ 5. In this action, P&G assert claims for trademark counterfeiting and infringement against Defendants. *Id*. ¶¶ 62–68. Plaintiffs also bring claims for false designation of origin and false advertising, and for violation of Washington's Consumer Protection Act ("CPA"). *Id*. ¶¶ 69–90. Amazon.com Services LLC ("Amazon Services") separately brings breach of contract claims against each Defendant. *Id*. ¶¶ 91–96.

After Defendants were served the complaint and failed to respond by the deadline, the Court entered default against Defendants on February 13, 2024. Dkt. No. 17. Plaintiffs failed to move for default judgment for a number of months thereafter, and the Court issued an order to show cause why the case should not be dismissed for failure to prosecute. Dkt. No. 18. In response, Plaintiffs filed a motion for default judgment. Dkt. No. 21. The Court lifts the order to show cause, and will grant Plaintiffs' motion for default judgment for the following reasons.

## II.    ANALYSIS

### A.    The Court Has Jurisdiction over the Subject Matter and the Parties.

Before entering default judgment, the Court must confirm that it has both subject matter

---

[2] The Court refers to the parties' briefing by CM/ECF page number.

and personal jurisdiction.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

       1.     *The Court Has Subject Matter Jurisdiction over Plaintiffs' Claims.*

The Court has federal question jurisdiction over Plaintiffs' claims for trademark infringement, false designation of origin, and false advertising.  And because Defendants are citizens of foreign states (Dkt. No. 1 ¶¶ 10–29) and Plaintiffs are corporations with their principal places of business in the United States (*id.* ¶¶ 7–8), and the amount in controversy exceeds $75,000, the Court also has diversity jurisdiction.

       2.     *The Court Has Personal Jurisdiction over Defendants.*

The Court also has personal jurisdiction over Defendants.  A forum selection clause alone can confer personal jurisdiction.  *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994).  The Business Solutions Agreement ("BSA") between Amazon and Defendants provides that Amazon may bring claims related to counterfeit products in the "Governing Courts," and the BSA defines "Governing Courts" as any state or federal court in King County, Washington, which includes this Court.  Dkt. No. 1 ¶¶ 32–35.  Accepting Plaintiffs' factual allegations as true, the Court has personal jurisdiction over Defendants.

**B.    Legal Standards on a Motion for Default Judgment**

The Court's decision to enter a default judgment is discretionary.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court "ordinarily disfavor[s]" default judgment because "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  In considering a motion for default judgment, the Court accepts "the well-pleaded factual allegations" as true, but "necessary facts not contained in the pleadings,

and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (cleaned up).

When considering whether to exercise its discretion to enter a default judgment, the Court may consider the following *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff,
> (2) the merits of plaintiff's substantive claim,
> (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

The Western District of Washington also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." Local Civil Rules W.D. Wash. LCR 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### C.   Plaintiffs are Entitled to Default Judgment Against Defendants.

The Court applies the *Eitel* factors to this case and finds that they favor a default judgment for all Plaintiffs' claims.

#### 1.   *Possibility of Prejudice to Plaintiffs*

For the first *Eitel* factor, the Court analyzes the possibility of prejudice to Plaintiffs. Prejudice exists when "the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (cleaned up).

1    In this case, Defendants have failed to respond to or otherwise defend against Plaintiffs'

2    complaint. Without a default judgment, Plaintiffs would have no recourse. Therefore, the Court

3    finds the first *Eitel* factor favors a default judgment.

4        2.    *Sufficiency and Merits of Plaintiffs' Complaint*

5    The Court analyzes the second and third *Eitel* factors—the merits of Plaintiffs' substantive

6    claim and the sufficiency of the complaint—together. *See, e.g.*, *Curtis*, 33 F. Supp. 3d at 1211.

7    For the following reasons, the Court finds that Plaintiffs have alleged facts in their complaint

8    showing that Defendants are liable on the claims asserted.

9        a.    <u>P&G's Trademark Counterfeiting and Infringement Claim</u>

10   As noted above, P&G alleges that Defendants counterfeited and infringed P&G's SK-II

11   Trademarks, in violation of 15 U.S.C. § 1114. Dkt. No. 1 ¶¶ 62–68.

12   To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must

13   show that the defendant used (1) a reproduction, counterfeit, copy or colorable imitation of the

14   plaintiff's registered trademark; (2) without the plaintiff's consent; (3) in commerce; (4) in

15   connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such

16   use is likely to cause confusion, or to cause a mistake or to deceive. *Amazon.com v. Kurth*, No.

17   2:18-cv-00353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019).

18   For the fifth element—the likelihood of confusion—a court tests whether the defendant's

19   use of the plaintiff's trademark is likely to confuse a reasonably prudent consumer in the

20   marketplace as to the origin of the product. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d

21   1127, 1129 (9th Cir. 1998). However, counterfeit marks are inherently confusing. *See Gucci*

22   *America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]onfusing

23   the customer is the whole purpose of creating counterfeit goods."). Therefore, a plaintiff can

24   establish likelihood of confusion by showing that the infringing mark is counterfeit. *Coach, Inc.*

1    *v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25,

2    2013).

3         Accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have sufficiently

4    stated their claim.  P&G owns the SK-II Trademarks, and Defendants used the counterfeit SK-II

5    marks without P&G's consent in commerce.  Dkt. No. 1 ¶¶ 64, 66.  As Defendants used counterfeit

6    SK-II marks, their use of the marks is inherently confusing.  Therefore, the Court finds the second

7    and third *Eitel* factors favor a default judgment for P&G on its trademark counterfeiting and

8    infringement claim.

9              b.    P&G's False Designation of Origin and False Advertising Claims

10        P&G brought claims against Defendants for false designation of origin under 15 U.S.C. §

11   1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B).  Dkt. No. 1 ¶¶ 69–77.

12             1)    False Designation of Origin

13        To prevail on a claim for false designation of origin, "a plaintiff must prove that the

14   defendant 1) used in commerce 2) any word, false designation of origin, false or misleading

15   description, or representation of fact, which 3) is likely to cause confusion or mistake, or to

16   deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul*

17   *Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015).  Again, because

18   counterfeit marks are inherently confusing, a plaintiff can show likelihood of confusion by

19   showing the infringing mark is counterfeit.  *Coach*, 2013 WL 5406220, at *3.

20        Accepting the allegations in Plaintiffs' complaint as true, the Court finds that Plaintiffs

21   have shown that Defendants are liable on the claim for false designation of origin.  P&G owns the

22   right to the SK-II Trademarks. Dkt. No. 1 ¶ 70.  Defendants sold counterfeit products bearing the

23   SK-II Trademarks in commerce.  *Id.* ¶ 72.  Because Defendants' marks are counterfeits, they are

24

likely to confuse or deceive as to the origin of the goods.  *Id*. ¶ 73.  For these reasons, the second and third *Eitel* factors favor a default judgment for P&G on its false designation of origin claim.

2)    False Advertising

To prevail on a claim for false advertising, a plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Amazon.com, Inc. v. Dong*, C21-159-TL, 2024 WL 775900, at *5 (W.D. Wash. Feb. 26, 2024) (quoting *Amazon.com, Inc. v. Wong*, No. C19-990, 2024 WL 553695, at *5 (W.D. Wash. Feb. 12, 2024)).

In this case, P&G alleges that Defendants sold counterfeit SK-II-branded products.  Dkt. No. 1 ¶ 72.  Specifically, P&G alleges that Defendants engaged in "commercial advertising, marketing, offering, distributing, and selling of counterfeit SK-II-branded products in interstate commerce."  *Id*.  P&G further alleges that Defendants used counterfeit versions of the SK-II marks to compete unfairly with P&G and deceive its customers, and Defendants' conduct led to hundreds of thousands of dollars in sales to Defendants.  *Id*., Dkt. No. 22 ¶¶ 3–4.  Finally, P&G alleges that Defendants wrongfully traded upon P&G's goodwill and reputation. Dkt. No. 1 ¶ 73.

Therefore, P&G has stated a claim for false advertising. The Court finds that the second and third *Eitel* factors favor a default judgment for P&G on its false advertising claim.

1

c.    Amazon's False Designation of Origin Claim[3]

Amazon brought a claim for false designation of origin under 15 U.S.C. § 1125(a)(1)(A). Dkt. No. 1 at 21–22.  A plaintiff is not required to own the trademarks that are infringed in order to state a claim under 15 U.S.C. § 1125(a).  *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1114 (S.D. Cal. 2018).  As noted above, to prevail on a claim for false designation of origin, "a plaintiff must prove that the defendant 1) used in commerce 2) any word, false designation of origin, false or misleading description, or representation of fact, which 3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul*, 78 F. Supp. 3d at 1170.  And again, because counterfeit marks are inherently confusing, a plaintiff can show likelihood of confusion by showing the infringing mark is counterfeit. *Coach*, 2013 WL 5406220, at *3.

Amazon alleges that Defendants' deceptive acts jeopardized its customers' trust in Amazon, tarnished Amazon's brand and reputation, and harmed Amazon and its customers.  Dkt. No. 1 ¶ 83.  Amazon has stated a claim against Defendants for false designation of origin, and the Court finds that the second and third *Eitel* factors favor a default judgment on this claim.

d.    Plaintiffs' CPA Claim

"To state a claim under the CPA, a plaintiff must allege: '(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'" *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 976 (9th Cir. 2016) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)).  "Absent unusual circumstances, the analysis of a CPA claim will

---

[3] Although Amazon also brought a false advertising claim against Defendants, it voluntarily dismissed that claim in the motion for default judgment. *See* Dkt. No. 21 at 16 n.3.  The Court will therefore only analyze its false designation of origin claim.

follow that of the trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).

As the Court has found that Plaintiffs have sufficiently stated their trademark infringement claims, and alleged that Defendants used counterfeit versions of the SK-II marks that are inherently confusing, the Court finds that Plaintiffs have stated a claim for violation of the CPA as well. Therefore, the Court finds that the second and third *Eitel* factors favor a default judgment for Plaintiffs on their CPA claim.

e.    Amazon Services' Breach of Contract Claim

To prevail on a breach of contract claim, a plaintiff must show (1) a valid contract existed between the parties, (2) the contract was breached, and (3) damages resulted. *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000).

The complaint establishes all three of these elements. First, Amazon Services alleges that when Defendants established their Selling Accounts, they agreed to the BSA and Amazon's anti-counterfeiting policy and other policies, and these contracts are valid. Dkt. No. 1 ¶¶ 48–53, 92. Second, Amazon Services alleges that Defendants' sale of counterfeit SK-II-branded products constituted a material breach of the BSA. Third, Amazon Services alleges that Defendants' breach resulted in damages totaling $393,937.00—the amount that Amazon refunded to customers who purchased the counterfeit SK-II products sold by Defendants. Dkt. No. 22 ¶ 4. Accepting these allegations as true, Amazon Services has sufficiently stated its claims for breach of contract. The Court thus finds the second and third *Eitel* factors favor a default judgment for Amazon Services on its breach of contract claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### 3.   The Sum of Money at Stake

For the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). The Court also assesses whether the amount of monetary damage requested is proportional to the harm caused by the defendant. *See Curtis*, 33 F. Supp. 3d at 1212.

In this case, Plaintiffs allege that Defendants willfully infringed P&G's SK-II Trademarks and sold at least $623,809 of counterfeit products. *See* Dkt. No. 22 ¶ 3. The amounts Plaintiffs seek to recover are substantial, but proportional to the scale of the misconduct alleged, and the Court finds that this factor therefore favors entry of a default judgment.

### 4.   Possibility of Dispute over Material Facts

For the fifth *Eitel* factor, the Court considers the possibility of dispute concerning material in facts. *Eitel*, 782 F.2d at 1471–72. Upon default, a plaintiff's factual allegations of the complaint will be taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Because Defendants failed to appear or otherwise respond, they have failed to rebut Plaintiffs' allegations or evidence provided to support their claims. Therefore, given that no dispute of material facts is apparent, the Court finds that the fifth *Eitel* factor favors entry of a default judgment.

### 5.   Possibility of Excusable Neglect

For the sixth *Eitel* factor, the Court assesses whether the defendant's default was due to excusable neglect. Here, the Court granted Plaintiffs' motion for alternative service and allowed Plaintiffs to serve Defendants by email. *See* Dkt. No. 14 at 3. Consistent with the Court's order, Plaintiffs subsequently provided an affidavit of service and confirmed that they received no error message or bounce-back. *See* Dkt. No. 15 at 3. Because Plaintiffs have submitted evidence to support their attempts to serve Defendants, and yet Defendants have made no apparent effort to

respond by the deadline, the Court finds that the sixth *Eitel* factor favors entry of a default judgment. *See Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

### 6.    Policy in Favor of Decision on the Merits

For the seventh *Eitel* factor, the Court addresses the strong policy preference in favor of resolution of Plaintiffs' claims on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, a defendant's "failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

Thus, although the Court's preference for resolving issues on their merits weighs against entry of a default judgment, this factor is outweighed by the other *Eitel* factors, as summarized here. Accordingly, the Court finds that Plaintiffs' motion for default judgment should be granted.

### D.    Plaintiffs Are Entitled to Statutory Damages.

Having found that Plaintiffs are entitled to entry of a default judgment, the Court now turns to consider the relief requested by Plaintiffs.

### 1.    Statutory Damages to P&G

The Lanham Act provides for three types of remedies in counterfeit trademark cases. *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1007 (9th Cir. 2023).

> When a plaintiff establishes a violation of any registered mark, subsection (a) makes available to the plaintiff, subject to equitable considerations, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." [15 U.S.C.] § 1117(a). For intentional violations, subsection (b) provides for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" and further specifies that "the court may award prejudgment interest on such amount[.]" § 1117(b). Subsection (c) allows a plaintiff to elect, "instead of actual damages and profits under subsection (a), an award of statutory damages" between $1,000 and $200,000 per counterfeit mark, or for a willful violation, up to $2,000,000 per counterfeit mark. § 1117(c).

*Id.* A willful trademark infringement occurs when "the defendant's actions are willfully calculated to exploit the advantage of an established mark." *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)). As the Court accepts all factual allegations as true when resolving a motion for default judgment, the Court accepts a plaintiff's allegation of a defendant's willful infringement. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Plaintiffs allege in their complaint that Defendants acted willfully by intentionally causing customer confusion regarding the origin and authenticity of the products sold. *See* Dkt. No. 1 ¶¶ 58, 66, 75, 80, 82–83. With respect to this willful infringement, P&G elects to recover statutory damages. Dkt. No. 21 at 21. Specifically, P&G requests the following in statutory damages for 13 counts of trademark infringements by each Defendant, with each total representing three times the total of counterfeit SK-II products sold in connection with each Defendant's Selling Account (Dkt. No. 12 ¶ 3, Dkt. No. 22 ¶ 3):

a. An award of $86,079 against Defendant Zhumabubu Abdyrakhmanova

b. An award of $209,253 against Defendant Adyl Arslanbek uulu

c. An award of $76,977 against Defendants Markus Biacsics and Zianaida Leinveber, jointly and severally

d. An award of $164,484 against Defendants Maksym Drahomyr and Oleh Myha, jointly and severally

e. An award of $170,898 against Defendant Viaceslav Ivanchyk

f. An award of $236,178 against Defendant Svitlana Karpalova

g. An award of $96,228 against Defendant Denys Kniaziev

h. An award of $24,975 against Defendants Melih Korkmaz, Inna Korman, and Tetiana Sierhieieva, jointly and severally

i. An award of $252,189 against Defendant Isabek Mamytov

j. An award of $107,658 against Defendant Vartan Manykyan

k. An award of $149,259 against Defendants Serhii Oliinyk, Kieran Rivera, and Oleksii Ulanov, jointly and severally

l. An award of $211,557 against Defendants Tetiana Pustovit and Anastasiia Shvehlo, jointly and severally

m. An award of $85,692 against Defendant Tetiana Volochniuk

In sum, P&G requests an award of statutory damages of $1,871,427, which represents three times the Defendants' alleged aggregate sales of $623,809 in counterfeit SK-II products. Dkt. No. 21 at 23, 29.

To calculate statutory damages for willful infringement, courts consider the need to: (1) "compensate" the plaintiffs for the damage the defendant's actions caused; (2) "deter" the defendants from violating the trademarks; and (3) "punish" the defendants for willfully violating the trademarks. *See Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007). The Court finds that the statutory damages requested by P&G will compensate P&G for the harm caused by Defendants' conduct, punish Defendants for that conduct and deter it in the future. Accordingly, the Court will award P&G the statutory damages it requests.

### 2.    *Actual Damages to Amazon Services*

Amazon Services seeks an award of the actual damages for Defendants' breaches of the BSA. Dkt. No. 21 at 29–31. Upon discovering that Defendants breached the BSA by selling counterfeit products, Amazon Services shut down Defendants' Selling Accounts and issued refunds to customers who purchased counterfeit SK-II-branded products from Defendants. *Id.* at 29. Amazon Services alleges that Defendants have not fully reimbursed Amazon to cover the refunds it issued, although they agreed to do so in the BSA. *Id.*

1

2

3

After accounting for funds that Amazon Services recovered from Defendants' sale proceeds or from the credit cards Defendants had on file with Amazon, Amazon Services seeks to recover actual damages from:

4

5

(1) Defendant Zhumabubu Abdyrakhmanova, the $22,449 amount owed by the Elmyr Beauty Selling Account he controlled;

6

7

(2) Defendant Adyl Arslanbek uulu the $50,381 amount owed by the Me-ato Selling Account he controlled;

8

9

(3) Defendants Markus Biacsics and Zianaida Leinveber, jointly and severally, the $17,126 amount owed by the FlorianSau Selling Account they jointly controlled;

10

11

(4) Defendants Maksym Drahomyr and Oleh Myha, jointly and severally, the $34,740 amount from the Quentin Brent Selling Account they jointly controlled;

12

13

(5) Defendant Viaceslav Ivanchyk the $33,701 amount owed by the Note It Selling Account he controlled;

14

15

(6) Defendant Svitlana Karpalova the $36,167 amount owed by the Yonus1 LLC Selling Account she controlled;

16

17

(7) Defendant Denys Kniaziev the $17,378 amount owed by the SeVerss Selling Account he controlled;

18

19

(8) Defendants Melih Korkmaz, Inna Korman, and Tetiana Sierhieieva, jointly and severally, the $6,608 amount owed by the Mknlfr Store Selling Account they jointly controlled;

20

21

(9) Defendant Isabek Mamytov the $59,007 amount owed by the Inneedgo Selling Account he controlled;

22

23

(10) Defendant Vartan Manykyan the $25,035 amount owed by the Salelogic Selling Account he controlled;

24

(11) Defendants Serhii Oliinyk, Kieran Rivera, and Oleksii Ulanov, jointly and severally, the $28,316 amount owed by the Bangalore LLC Selling Account they jointly controlled;

(12) Defendants Tetiana Pustovit and Anastasiia Shvehlo, jointly and severally, the $51,941 amount owed by the Gorali Selling Account they jointly controlled; and

(13) Defendant Tetiana Volochniuk the $11,088 amount owed by the Atios Selling Account she controlled.  Dkt. No. 21 at 30.

The Court finds these requests reasonable and consistent with the terms of the BSA. *See* Dkt. No. 1-3 § 6.1.  Therefore, the Court awards the actual damages as Amazon Services requested.

**E.    Plaintiffs Are Entitled to a Permanent Injunction.**

Plaintiffs request the Court permanently enjoin Defendants from:

a. selling counterfeit or infringing products in Amazon's stores;
b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;
c. manufacturing, importing, distributing, offering to sell, or selling any product using the SK-II brand or SK-II Trademarks, or which otherwise infringes P&G's intellectual property, in any store or in any medium; and
d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

Dkt. No. 21 at 31.

The Court has authority under 15 U.S.C. § 1116(a) to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the trademark owner.  *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).  In addition, the CPA also allows parties to seek a permanent injunction to prevent further violations.  WASH. REV. CODE § 19.86.090.  A plaintiff seeking a permanent injunction must satisfy the following four elements.  First, the plaintiff must show that it has suffered an irreparable injury.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Second, the plaintiff must show that remedies available at law, such as monetary damages, are inadequate to compensate for the irreparable injury.  *Id*.  Third, the plaintiff must show that a remedy in equity

1    is warranted considering the balance of hardships between the plaintiff and defendant. *Id*. Fourth,

2    the plaintiff must show that the public interest would not be disserved by a permanent injunction.

3    *Id*.

4         The Court finds that Plaintiffs have satisfied the first element, because a finding that a

5    plaintiff's trademark has been infringed creates a rebuttable presumption that a plaintiff suffered

6    an irreparable injury. *See* 15 U.S.C. § 1116; *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121,

7    1133 (W.D. Wash. 2012). Defendants have not rebutted the presumption.

8         Plaintiffs also have satisfied the second element because they have shown that remedies at

9    law are inadequate to compensate for their irreparable injury. Generally, monetary damages alone

10   are inadequate to remedy trademark infringement. *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d

11   1342, 1367 (W.D. Wash. 2014). Plaintiffs have alleged damage to their businesses, reputations,

12   and goodwill that cannot be fully resolved via monetary damages. Dkt. No. 1 ¶¶ 68, 76, 83.

13        Plaintiffs have satisfied the third element as well, as a balancing of hardship warrants a

14   permanent injunction. On one hand, there is no legitimate interest in selling counterfeit products.

15   *T-Mobile*, 862 F.Supp.2d at 1133–34. Therefore, there is no hardship for Defendants in this case.

16   On the other hand, there are substantial threats to Plaintiffs' business reputation if the Court does

17   not enjoin Defendants' illegal actions. *See* Dkt. No. 1 ¶¶ 66, 73, 79. Thus, the balance of hardship

18   tips in favor of Plaintiffs.

19        Finally, Plaintiffs have satisfied the fourth element, because a permanent injunction in this

20   case would promote the public interest. A permanent injunction will benefit the public by

21   preventing likelihood of confusion to consumers and minimizing the risk of purchasing fraudulent

22   merchandise. *Treemo*, 53 F. Supp. 3d at 1368.

23        Because Plaintiffs have satisfied all four elements for a permanent injunction, the Court

24   will grant Plaintiffs' request for a permanent injunction against Defendants.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment. Dkt. No. 21.

1.  Judgment is entered as follows against Defendants on (1) P&G's claims for (a) trademark infringement and trademark counterfeiting, and (b) false designation of origin and false advertising; (2) Amazon's claim for false designation of origin; (3) Plaintiffs' claim for violation of the CPA; and (4) Amazon.com Services' claim for breach of contract.

2.  The Court awards P&G a total of $1,871,427.00 in statutory damages for each Defendant's willful trademark infringement, as follows:

    a.  An award of $86,079.00 against Defendant Zhumabubu Abdyrakhmanova for counterfeit sales from the following Selling Account: Elmyr Beauty;

    b.  An award of $209,253.00 against Defendant Adyl Arslanbek uulu for counterfeit sales from the following Selling Account: Me-ato;

    c.  An award of $76,977.00 against Defendants Markus Biacsics and Zianaida Leinveber, jointly and severally, for counterfeit sales from the following Selling Account: FlorianSau;

    d.  An award of $164,484.00 against Defendants Maksym Drahomyr and Oleh Myha, jointly and severally, for counterfeit sales from the following Selling Account: Quentin Brent;

    e.  An award of $170,898.00 against Defendant Viaceslav Ivanchyk for counterfeit sales from the following Selling Account: Note It;

    f.  An award of $236,178.00 against Defendant Svitlana Karpalova for counterfeit sales from the following Selling Account: Yonus1 LLC;

g.  An award of $96,228.00 against Defendant Denys Kniaziev for counterfeit sales from the following Selling Account: SeVerss;

h.  An award of $24,975.00 against Defendants Melih Korkmaz, Inna Korman, and Tetiana Sierhieieva, jointly and severally, for counterfeit sales from the following Selling Account: Mknlfr Store;

i.  An award of $252,189.00 against Defendant Isabek Mamytov for counterfeit sales from the following Selling Account: Inneedgo;

j.  An award of $107,658.00 against Defendant Vartan Manykyan for counterfeit sales from the following Selling Account: Salelogic;

k.  An award of $149,259.00 against Defendants Serhii Oliinyk, Kieran Rivera, and Oleksii Ulanov, jointly and severally, for counterfeit sales from the following Selling Account: Bangalore LLC;

l.  An award of $211,557.00 against Defendants Tetiana Pustovit and Anastasiia Shvehlo, jointly and severally, for counterfeit sales from the following Selling Account: Gorali; and

m.  An award of $85,692.00 against Defendant Tetiana Volochniuk for counterfeit sales from the following Selling Account: Atios.

3.  The Clerk is directed to enter judgment against Defendants and in favor of P&G for the amounts set forth above.

4.  The Court awards Amazon.com Services LLC a total of $393,937.00 in actual damages, for Defendants' breaches of contract:

a.  An award of $22,449.00 against Defendant Zhumabubu Abdyrakhmanova for counterfeit sales from the following Selling Account: Elmyr Beauty;

b. An award of $50,381.00 against Defendant Adyl Arslanbek uulu for counterfeit sales from the following Selling Account: Me-ato;

c. An award of $17,126.00 against Defendants Markus Biacsics and Zianaida Leinveber, jointly and severally, for counterfeit sales from the following Selling Account: FlorianSau;

d. An award of $34,740.00 against Defendants Maksym Drahomyr and Oleh Myha, jointly and severally, for counterfeit sales from the following Selling Account: Quentin Brent;

e. An award of $33,701.00 against Defendant Viaceslav Ivanchyk for counterfeit sales from the following Selling Account: Note It;

f. An award of $36,167.00 against Defendant Svitlana Karpalova for counterfeit sales from the following Selling Account: Yonus1 LLC;

g. An award of $17,378.00 against Defendant Denys Kniaziev for counterfeit sales from the following Selling Account: SeVerss;

h. An award of $6,608.00 against Defendants Melih Korkmaz, Inna Korman, and Tetiana Sierhieieva, jointly and severally, for counterfeit sales from the following Selling Account: Mknlfr Store;

i. An award of $59,007.00 against Defendant Isabek Mamytov for counterfeit sales from the following Selling Account: Inneedgo;

j. An award of $25,035.00 against Defendant Vartan Manykyan for counterfeit sales from the following Selling Account: Salelogic;

k. An award of $28,316.00 against Defendants Serhii Oliinyk, Kieran Rivera, and Oleksii Ulanov, jointly and severally, for counterfeit sales from the following Selling Account: Bangalore LLC;

l.   An award of $51,941.00 against Defendants Tetiana Pustovit and Anastasiia Shvehlo, jointly and severally, for counterfeit sales from the following Selling Account: Gorali; and

m.   An award of $11,088.00 against Defendant Tetiana Volochniuk for counterfeit sales from the following Selling Account: Atios.

5.   The Clerk is directed to enter judgment against Defendants and in favor of Amazon.com Services LLC for the amounts set forth above.

6.   Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from:

a.   selling counterfeit or infringing products in Amazon's stores;

b.   selling counterfeit or infringing products to Amazon or any Amazon affiliate;

c.   importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of P&G's brand or trademarks, or which otherwise infringes P&G's intellectual property, in any store or in any medium; and

d.   assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

7.   The Court hereby retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

8. Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendants' last known email addresses registered with Amazon, which Plaintiffs used to complete service.

Dated this 6th day of December, 2024.

Kymberly K. Evanson
United States District Judge